The First National Bank at Wilkinsburg v. Commissioner.
First Nat'l Bank v. Commissioner
Docket No. 44956.
United States Tax Court
T.C. Memo 1954-78; 1954 Tax Ct. Memo LEXIS 170; 13 T.C.M. (CCH) 576; T.C.M. (RIA) 54184; June 25, 1954, Filed *170 Richard S. Doyle, Esq., and Jules G. Korner, III, Esq., for the petitioner. George J. Rabil, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency in income tax of $8,818.97 for 1948 and one of $4,297.65 for 1949. The only issue for decision is the amount of a reasonable addition for each year to the bad debt reserve. Findings of Fact The First National Bank of Wilkinsburg, which had been in existence for a number of years, was closed by order of the Comptroller of the Currency on March 4, 1933 and was never allowed to reopen. A conservator and later a receiver were appointed. They collected the outstanding loans, liquidated the assets and settled with creditors but made no new loans or investments. The affairs of the old bank were concluded in 1938. The petitioner was organized on November 15, 1933 and engaged in the general banking business until November 27, 1953. It took over one-half of the assets and assumed one-half of the liabilities of the old bank. The depositors of the old bank could use one-half of those deposits either to subscribe for stock of the petitioner or as a deposit in the petitioner. *171 The best loans of the old bank were selected with the approval of the Comptroller of the Currency for transfer to the petitioner to offset the deposits and other liabilities of the old bank assumed in the reorganization. None of the transferred loans resulted in a loss. The petitioner used the same building and the same employees as had the old bank. It retained about 70 per cent of the old customers. Three directors of the old bank became directors of the petitioner. No officer of the old bank became an officer of the petitioner. The petitioner, like other new banks in the area, was extremely cautious in making new loans, made a relatively small amount of new loans and sustained practically no losses from bad debts during the years 1934 through 1938. The petitioner filed its returns for 1948 and 1949 with the collector of internal revenue for the Twenty-third District of Pennsylvania. It used an accrual method of accounting and on each return claimed a deduction for an addition to its reserve for bad debts. The Commissioner, in determining the deficiencies, disallowed a part of the deduction for each year. The petitioner's outstanding loans at the end of the year, the balance *172 in its reserve for bad debts at the beginning of the year, the net amount charged off for bad debts during the year, and the additions to the reserve allowed by the Commissioner for the taxable years was as follows: Reserve balance
Addition
Loans Dec. 31
Jan. 1
Charge-off
allowed
1948
$2,661,000
$15,789.85
$15,170.18
$ 9,446.55
1949
2,916,000
10,066.22
10,501.39
10,932.77
The net loans outstanding, net bad debt losses (charge-offs less recoveries) and ratios of net losses to net loans of the petitioner for each of the years 1933 to 1953, inclusive, as well as ratios of net losses to net loans of all member banks of the Fourth Federal Reserve District, in which the petitioner was located, for each of the years 1929 to 1953, inclusive, are as follows: Ratio of net losses
to net loans (1%)
Net Loans Outstanding
Net bad debt
4th Federal
Year
(in even thousands)
losses
Taxpayer
Reserve District
1929
(a)
(a)
(a)
.3
1930
(a)
(a)
(a)
.5
1931
(a)
(a)
(a)
.8
1932
(a)
(a)
(a)
1.7
1933
(a)
(a)
(a)
2.6
1934
$ 507,000.00
0
0
3.6
1935
560,000.00
0
0
1.3
1936
748,000.00
0
0
1.2
1937
850,000.00
$ 697.99
.1
.4
1938
968,000.00
0
0
.4
1939
979,000.00
210.00
(b)
.3
1940
932,000.00
733.00
.1
.1
1941
1,031,000.00
305.00
(b)
(b)
1942
763,000.00
162.50
(b)
(b)
1943
606,000.00
37.46
(b)
(c) +.2
1944
565,000.00
789.57
.1
(c) +.2
1945
840,000.00
1,661.70
.2
(c) +.2
1946
1,504,000.00
355.34
(b)
(c) +.2
1947
2,504,000.00
2,234.83
.1
.2
1948
2,661,000.00
15,170.18
.6
.1
1949
2,916,000.00
10,501.39
.4
.1
1950
3,973,000.00
4,230.22
.1
.1
1951
4,591,000.00
10,043.92
.2
.08
1952
4,349,000.00
11,460.34
.3
.05
1953
4,890,000.00
25,857.56
.5
.08
*173 Reasonable additions to the reserve of the petitioner for bad debts are $16,000 for 1948 and $17,000 for 1949. All facts stipulated are incorporated herein by this reference. Opinion MURDOCK, Judge: Section 23(k) allows as a deduction for bad debts "(in the discretion of the Commissioner) a reasonable addition to a reserve for bad debts." The Regulations provide no precise formula for computing a reasonable addition but recognize that the amount will vary with circumstances, including the degree of prosperity. "It will depend primarily upon the total amount of debts outstanding as of the close of the taxable year, those arising currently as well as those arising in prior taxable years, and the total amount of the existing reserve" is the rule stated in Section 29.23(k)-5, Regulations 111. The Commissioner, in determining the amounts which he allowed, allegedly followed the admittedly "mechanical" method of Mimeograph 6209, C.B. 1947-2, p. 26, and supplemented the actual bad debt experience of the petitioner with the average bad debt experience of all member banks in the Fourth *174 Federal Reserve District for those years in which the petitioner was not in existence to compute the petitioner's "20-year moving average loss rate." That Mimeograph does not have the force and effect of law. The statement in , is apropos here: "The test, however, is whether the amount ultimately determined, regardless of formula, constitutes a reasonable addition to petitioner's reserve. What constitutes a reasonable addition will depend upon the facts and circumstances of the business engaged in with relation to general business conditions. A method or formula that produces a reasonable addition to a bad debt reserve in one year, or a series of years, may be entirely out of tune with the circumstances of the year involved." The additions to the reserve allowed for these two years were less, in total, than the total net charge-offs for those years. Those amounts were less than reasonable additions to the reserve within the meaning and purpose of section 23(k) in the light of all of the circumstances. The Court has determined additions which should be allowed as deductions, following to some extent the principle set forth *175 in . Decision will be entered under Rule 50. Footnotes
a. Petitioner not in existence ↩
b. Less than.05% ↩
c. Recoveries exceed charge-offs↩